1
2
3
4
5
6
7
8           **UNITED STATES DISTRICT COURT**
9           **CENTRAL DISTRICT OF CALIFORNIA**
10

11   THANH VO, an individual          Case No.:  8:19-cv-02177-JLS-DFM
12              Plaintiff,             **ORDER GRANTING IN PART**
13        vs.                          **AND DENYING IN PART**
                                       **PLAINTIFF'S MOTION FOR**
14   JOHN PAUL CHOI, an individual;    **DEFAULT JUDGMENT (Doc. 16)**
15              Defendant.
16
17
18
19
20
21
22
23
24
25
26
27
28

Before the Court is Plaintiff Thanh Vo's Motion for Default Judgment (the "Motion"). (Doc. 16.) The Court finds this matter appropriate for resolution without oral argument. *See* Fed. R. Civ. P. 78(b); C.D. Cal. R. 7-15. Having reviewed the moving papers and considered Plaintiff's arguments, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion.

## I.    BACKGROUND

### A. Facts

The following facts are drawn from Plaintiff's Complaint (Compl., Doc. 1). Plaintiff is a paraplegic who is unable to walk or stand, and thus requires the use of a wheelchair at all times when traveling in public. *Id.* ¶ 8. Defendant John Paul Choi is or was at the time of the incident, the owner, operator, lessor and/or lessee of a sales or retail establishment located at 10021 Garden Grove Blvd., Garden Grove, California 92844 (the "Subject Property"). *Id.* ¶¶ 1, 7, 9.

On October 19, 2019, Plaintiff alleges that she encountered multiple barriers when she attempted to patronize the Subject Property. *Id.* ¶¶ 9–10. Specifically, Plaintiff contends that the access aisle and/or accessible parking spaces at the Subject Property have slopes and cross slopes that exceed 2.0%. Without a level parking space, it becomes difficult for Plaintiff to unload/transfer from her vehicle as her wheelchair rolls. *Id.* at ¶ 10. Additionally, there are no parking spaces designated and configured for van accessibility. Without a van-accessible parking space, there is not enough room for the ramp on Plaintiff's van to fold out, leaving her unable to exit her vehicle. *Id.* Parking spaces designated as accessible are not properly configured, including but not limited to parking spaces and access aisles that are too narrow and/or short, which also make it difficult for Plaintiff to exit her vehicle. *Id.* Access aisles accompanying accessible spaces also lack markings to discourage patrons from parking in the access aisle. *Id.* ¶ 9.

In her Complaint, Plaintiff asserts two claims: violation of the Unruh Civil
Rights Act (the "Unruh Act"), California Civil Code §§ 51–52 and violation of the
Americans with Disabilities Act of 1990 (the "ADA"), 42 U.S.C. § 12101. *Id.* ¶¶ 15–
30. In her Motion, Plaintiff seeks injunctive relief, $4,000 in statutory penalties under
the Unruh Act, $3,080 in attorney's fees, and $460 in costs.

### B. Procedural History

On November 11, 2019, Plaintiff initiated the underlying action against
Defendant (Doc. 1). On December 17, 2019, Defendant was served with a summons
via substituted service (Doc. 12).

On March 3, 2020, Plaintiff filed a request for the Clerk of Court to enter
default against Defendant (Doc. 13).

On March 10, 2020, the Clerk of Court entered default against Defendant (Doc.
14) pursuant to Federal Rule of Civil Procedure 55(a).

On April 7, 2020, Plaintiff filed the instant Motion.

On April 20, 2020, the Court declined supplemental jurisdiction over Plaintiff's
Unruh Act claim (Doc. 21).

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) provides that the Court may, in its
discretion, enter default judgment following entry of default by the Clerk. Local Rule
55 sets forth procedural requirements that must be satisfied by a party moving for
default judgment. Upon entry of default, the well-pleaded allegations of the complaint
are taken as true, with the exception of allegations concerning the amount of damages.
*See Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

The Ninth Circuit has set forth seven factors to be considered by courts in
reviewing a motion for default judgment:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

(1) the possibility of prejudice to the plaintiff, (2) the merits of
plaintiff's substantive claim, (3) the sufficiency of the complaint, (4)
the sum of money at stake in the action[,] (5) the possibility of a dispute
concerning material facts[,] (6) whether the default was due to
excusable neglect, and (7) the strong policy underlying the Federal
Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

"If the court determines that the allegations in the complaint are sufficient to establish liability, it must then determine the 'amount and character' of the relief that should be awarded." *Landstar Ranger, Inc. v. Parth Enters., Inc.*, 725 F. Supp. 2d 916, 920 (C.D. Cal. 2010) (quoting 10A Charles Alan Wright et al., *Federal Practice and Procedure* § 2688, at 63 (3d ed. 1998)).

## III.    DISCUSSION

### A. Procedural Requirements

Plaintiff has satisfied the requirements of Local Rule 55-1 and Federal Rule of Civil Procedure 55(b). Defendant is neither an infant nor incompetent nor in military service or otherwise exempt under the Servicemembers Civil Relief Act. (Tsao Decl., Doc. 17 ¶¶ 4–5.) Plaintiff has requested and received an entry of default against Defendant. Having ascertained Plaintiff's procedural compliance, the Court turns to the substance of Plaintiff's Motion.

### B. *Eitel* Factors

#### 1.  Possibility of Prejudice to Plaintiff

The first *Eitel* factor requires the Court to consider the harm to Plaintiff if the Court does not grant default judgment. *See PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Absent default judgment in this case, Plaintiff would be denied the right to judicial resolution of the claims presented and would be without other recourse for recovery. *See id.*; *Elektra Entm't Group Inc. v. Crawford*,

226 F.R.D. 388, 392 (C.D. Cal. 2005). Accordingly, this factor weighs in favor of default judgment.

### 2. The Merits of Plaintiff's Claims and Sufficiency of Complaint

Courts often consider the second and third *Eitel* factors together. *See PepsiCo*, 238 F. Supp. 2d at 1175. The second and third *Eitel* factors look to whether a plaintiff has sufficiently stated a claim for relief in her complaint. In their analysis of the second and third *Eitel* factors, courts accept as true all well-pleaded allegations regarding liability. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002).

#### a. ADA Claim

Title III of the ADA provides, "No individual shall be discriminated against on the basis of a disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "To prevail on a Title III discrimination claim, the plaintiff must show that (1) [he or she] is disabled within the meaning of the ADA; (2) the defendant is a private entity that owns leases, or operates a place of public accommodation; and (3) the plaintiff was denied public accommodations by the defendant because of [his or her] disability." *Molski v. M.J. Cable*, Inc., 481 F.3d 724, 730 (9th Cir. 2007). One way in which a defendant can deny a plaintiff public accommodation is by failing to remove architectural barriers that impede the plaintiff's access to the public accommodation, unless the removal of such barriers is not readily achievable. *See* 42 U.S.C. § 12182(b)(2)(A)(iv).

Here, Plaintiff sufficiently alleged a violation of the ADA. First, Plaintiff has shown that she is disabled within the meaning of the ADA. The ADA defines disability as "a physical or mental impairment that substantially limits one or more major life activities." *Id.* § 12102(1)(A). Plaintiff is a paraplegic who is unable to

walk or stand, and thus requires the use of a wheelchair. Compl. ¶ 8. This mobility impairment limits major life activities and the Court therefore finds that she is a person with a disability under the ADA.

Next, Plaintiff has shown that the Subject Property is a public accommodation. The Subject Property is "a sales or retail establishment, open to the public, which is intended for nonresidential use[.]" *Id.* ¶ 9. As such, the business affects commerce. *Cf. E.E.O.C. v. Ratliff*, 906 F.2d 1314, 1318 (9th Cir. 1990) ("[I]f a statute covers business 'in commerce,' a fairly specific showing must be made of a connection between the particular employer regulated and interstate commerce. . . . On the other hand, a statute may require only that the particular business 'affect' commerce . . . In such cases there is statutory jurisdiction so long as the business is in a class of activity that as a whole affects commerce." (quoting *Usery v. Lacy*, 628 F.2d 1226, 1228 (9th Cir. 1980))). Therefore, the Subject Property is a public accommodation as defined under the ADA.

Finally, Plaintiff has shown that the Subject Property's architectural barriers denied her public accommodation due to her disability. Architectural barriers are defined by the ADA Accessibility Guidelines ("ADAAG"). *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011). Under the 2010 ADAAG, any business that provides parking spaces must provide accessible parking spaces, the number of which depends on the date the lot was constructed. 1991 Standards § 4.1.2(5); 2010 Standards § 208. Under the 2010 Standards, one in every six accessible parking spaces, but no fewer than one, must be van accessible. 2010 ADAAG Standards § 208.2.4. Under ADAAG § 502.2, "[c]ar parking spaces shall be 96 inches (2440 mm) wide minimum and van parking spaces shall be 132 inches (3350 mm) wide minimum, [and] shall be marked to define the width, and shall have an adjacent access aisle complying with 502.3." ADAAG § 502.3.3 requires that "[a]ccess aisles shall be marked so as to discourage parking in them."

Here, Plaintiff alleges that she attempted to visit the Subject Property on October 10, 2019. Compl. ¶¶ 9–10. Plaintiff alleges that during this visit, she encountered, among other things, access aisles and/or accessible parking spaces with slopes and cross slopes that exceed 2.0%, creating excessive sloping. Additionally, there were no parking spaces designated and configured for van accessibility. Without a van-accessible parking space, there is not enough room for the ramp on Plaintiff's van to fold out, leaving her unable to exit her vehicle. *Id.* These allegations are sufficient to establish multiple architectural barriers under the 2010 ADAAG Standards.

Whether removal of a barrier is readily achievable is an affirmative defense. *See Molski v. Foley Estates Vineyard*, 531 F.3d 1043, 1048 (9th Cir. 2008); *Colorado Cross Disability Coalition v. Hermanson Family Ltd. P'ship*, 264 F.3d 999, 1002–03 (10th Cir. 2001). If a "defendant has failed to plead that barrier removal is not readily achievable in its answer . . . the defense is waived." *Wilson v. Haria & Gogri Corp.*, 479 F. Supp. 2d 1127, 1133 n.7 (E.D. Cal. 2007). Here, Defendant has failed to respond and thus has waived any affirmative defense. Therefore, Plaintiff has alleged sufficient facts to state a meritorious claim for violation of the ADA.

### b.   Violation of the Unruh Civil Rights Act

The Court has declined supplemental jurisdiction over Plaintiff's claim under the Unruh Act. Accordingly, the Court denies Plaintiff's Motion for Default Judgment as it relates to Plaintiff's Unruh Claim.

### 3.  Amount of Money at Issue

The fourth *Eitel* factor requires the Court to balance the amount of money at stake against the seriousness of Defendant's conduct. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal.

2014). Here, Plaintiff seeks a judgment of $7,540, including statutory damages, attorney's fees, and costs.

This amount, plus any amount that would be spent to comply with an injunction under the ADA, would be the entirety of Defendant's liability. The Court has found that removing the architectural barriers at issue would not amount to an onerous financial undertaking. Moreover, because the Court has declined to exercise supplemental jurisdiction over Plaintiff's Unruh Act claim, $4,000 will be deducted from Plaintiff's recovery. In sum, therefore, the amount of money at issue is relatively small. *Cf. Moore v. Cisneros*, No. 1:12-CV-00188-LJO, 2012 WL 6523017, at *4 (E.D. Cal. Dec. 13, 2012) (noting that an award of $10,119.70 on default judgment, including attorney's fees and costs, was "not a relatively large sum of money, nor does it appear unreasonable in light of the allegations in the complaint"). For these reasons, the fourth *Eitel* factor favors entry of default judgment against Defendant.

### 4. Possibility of a Dispute Concerning Material Facts

The fifth *Eitel* factor requires the Court to consider the possibility of a dispute as to material facts in the case. Where a plaintiff's complaint is well-pleaded and the defendant makes no effort to properly respond, the likelihood of disputed facts is very low. *See Landstar Ranger*, 725 F. Supp. 2d at 921. As discussed, Plaintiff has adequately alleged disability discrimination in violation of the ADA, and Defendant failed to appear. Defendant has therefore admitted all material facts alleged in the Complaint. Accordingly, this factor weighs in favor of default judgment.

### 5. Possibility of Excusable Neglect

The sixth *Eitel* factor considers the possibility that a defendant's default resulted from excusable neglect. *Vogel*, 992 F. Supp. 2d at 1013. Due process requires that interested parties be given notice of the pendency of the action and be afforded an opportunity to present their objections before a final judgment is

rendered. *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314 (1950). While there is always a possibility that a defendant might appear and claim excusable neglect, where the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion," this factor favors entry of default judgment. *Shanghai Automation Instrument Co. Ltd. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

That is the case here, where, despite Plaintiff's proper service, Defendant made no effort to defend this suit. The likelihood of excusable neglect is therefore low, and this factor favors default judgment.

### 6. Policy Favoring Decision on the Merits

The seventh *Eitel* factor requires the Court to consider the strong judicial policy favoring decisions on the merits before granting default judgment. Whenever reasonably possible, cases should be decided on their merits. *Eitel*, 782 F.2d at 1472; *PepsiCo*, 238 F. Supp. 2d at 1177. However, the policy favoring decisions on the merits does not prevent a court from entering judgment where a defendant fails to respond. *PepsiCo*, 238 F. Supp. 2d at 1177.

Here, the Court is unable to rule on the merits because Defendant has not responded to the Complaint or taken any action to defend himself in this case. Accordingly, the seventh *Eitel* factor does not preclude the Court from entering default judgment against Defendant.

Taken together, the seven *Eitel* factors weigh in favor of granting default judgment against Defendant.

### IV.    REMEDIES

Under the remaining ADA claim, Plaintiff seeks injunctive relief, attorney's fees, and costs. The Court addresses each in turn.

**A. Injunctive Relief**

Plaintiff seeks injunctive relief under the ADA requiring Defendant to bring the Subject Property into compliance with the ADAAG.  To be entitled to injunctive relief under 42 U.S.C. § 12188(a)(2), Plaintiff must show that Defendant has violated the ADAAG. "In case of violations . . . injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . ." 42 U.S.C. § 12188(a)(2); *see also Moeller v. Taco Bell*, 816 F. Supp. 2d 831, 859 (N.D. Cal. 2011); *Vogel*, 992 F. Supp. 2d at 1015. "A plaintiff is not required to satisfy the other prerequisites generally needed for injunctive relief since '[t]he standard requirements for equitable relief need not be satisfied when an injunction is sought to prevent the violation of a federal statute which specifically provides for injunctive relief.'" *Vogel*, 992 F. Supp. 2d at 1015 (quoting *Moeller*, 816 F. Supp. 2d at 859). Thus, injunctive relief is proper when architectural barriers violate the ADA and the removal of the barriers is readily achievable. *See Vogel*, 992 F. Supp. 2d at 1015; *Moreno v. La Curacao*, 463 F. App'x 669, 670 (9th Cir. 2011).

As noted above, Plaintiff has stated a viable Title III discrimination claim. Architectural barriers relating to accessible parking at the Subject Property prevented Plaintiff from using and enjoying the facilities. Injunctive relief is thus appropriate to compel Defendant to remove barriers at the Subject Property in compliance with the ADA so that the facility is readily accessible to, and usable by, individuals with disabilities. Therefore, the Court finds it appropriate to grant injunctive relief to provide accessible parking spaces compliant with 1991 Standards § 4.1.2(5) or 2010 Standards § 208, whichever is applicable.

**B. Attorney's Fees**

The ADA permits a court "in its  discretion" to award attorneys' fees and costs to the "prevailing party." 42 U.S.C. § 12205. "Attorney's fee awards are calculated using the

9

lodestar method whereby the hours reasonably spent in the litigation are multiplied by a reasonable hourly rate." *Johnson v. Luu-Truong*, No. 2:14-CV-1078-MCE-KJN, 2014 WL 4678344, at *8 (E.D. Cal. Sept. 19, 2014) (citing *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.2 (9th Cir. 2001)). "The party seeking an award of fees must submit evidence supporting the hours worked and the rates claimed. A district court should exclude from the lodestar amount hours that are not reasonably expended because they are 'excessive, redundant, or otherwise unnecessary.'" *Van Gerwen v. Guarantee Mut. Life Co.*, 214 F.3d 1041, 1045 (9th Cir. 2000) (internal citation omitted) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)).

Here, Vo's counsel, Pamela Tsao, spent 7.7 billable hours prosecuting this case at an hourly rate of $400. (Ex. A to Tsao Decl., Doc. 17-1.) She had anticipated spending an additional two hours preparing for the hearing on this Motion, but no hearing was necessary. Tsao submitted a declaration (implicitly) asserting the reasonableness of her claimed hourly rate based on her experience, as well as an itemized billing record detailing the tasks she completed in prosecuting this case. Although she did not explain the reasonableness of her claimed hourly rate in reference to prevailing rates, the Court is familiar with prevailing rates in the market.

Based on its judgment and experience, the Court finds Tsao's hourly rate reasonable. But the Court finds that the amount of time Tsao spent on preparing the instant Motion, three and a half (3.5) hours (*id.*), is not reasonable. The Motion and its supporting papers (1) interchangeably use different gender pronouns to refer to Plaintiff without rhyme or reason (for that reason, the Court randomly settled on "she/her" for purposes of this Order), and (2) contain a different ADA plaintiff's name in at least one instance (*see* Vo Decl., Doc. 18 at 1), strongly suggesting that this Motion is simply a cut-and-paste job. The Court therefore deducts two hours from the time Tsao spent on preparing this Motion (from three and a half to one and a

half), bringing the total number of billable hours to 5.7. Accordingly, the Court awards Plaintiff **$2,280** ($400 x 5.7) in attorney's fees.

### C. Costs

Plaintiff also seeks to recover $460 in costs. Of this amount, $400 is for filing fees and $60 is for service of process. In accordance with Local Rules 54-2 and 54-3, Plaintiff must submit a "Bill of Costs" and an "Application to the Clerk to Tax Costs" to recover any eligible litigation costs in this action.

## V.    CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART AND DENIES IN PART Plaintiff's Motion for Default Judgment, as follows: the Court DENIES plaintiff's Motion as to Plaintiff's Unruh Act claim and GRANTS the Motion as to Plaintiff's claim under the ADA. Finally, the Court awards injunctive relief; attorney's fees in the amount of $2,280; and eligible costs under Local Rule 54-3.

Plaintiff is ORDERED to submit to the Court, within **five (5) days from the date of this Order**, a proposed judgment, including permanent injunction, in accordance with this Order and pursuant to the Court's procedures.

DATED: July 1, 2020

_____
JOSEPHINE L. STATON
UNITED STATES DISTRICT JUDGE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28